al. Okay, Mr. Young. Thank you. Good morning, Your Honors. Try it again. In regard to Mr. Croak's appeal, I think it's important for two reasons. The first is, as the district court noted, the meaning of available remedy under 30105C has never been defined, and case law provides little guidance. This was the ruling in the court's ruling. The second reason I think this case, Mr. Croak's appeal, is very important is it gives this court an opportunity to answer the question that was never answered in Jackson v. Northbank Towing, which is essentially, what jurisdiction does a district court have to entertain foreign semen claims under foreign law? And I'll speak to that issue in a second. As to the first question, which is the meaning of available remedy under 30105C, on appeal, Mr. Croak urges that the word available has simply got to be given some meaning in it. The lower court essentially went through the analysis under foreign nonconvenience, and the lower court says there is no available forum in Nigeria for Mr. Croak. We know that because Judge Vance had made that ruling at the outset of the case. The lower court then shifted gears and said, Mr. Croak seems to be confused, though, because an available forum is not the same thing as a remedy, and then it quoted the Castanel case, which essentially acknowledges that Nigeria does provide on their books some type of remedy for injury cases. So, because Nigeria does legally have a remedy over there, the lower court said, I'm going to say that there is an available remedy to this man under Section C. And there he is. Not against these defendants, but there is a remedy for him. As against PPIN? As against, I guess as against which entity, Your Honor? Well, I guess PPIN is a Nigerian company, right? PPIN is a Nigerian company. And there's jurisdiction over it. And nobody questions his understanding that they provide a remedy for the injury that he is claiming. Is that correct? I don't know. I think the case law has established that Nigerian law does provide remedies. I'm not going to argue to this Court that— So, I mean, if he went to, if he went to, I mean, in a, say, in a vacuum— Yes. —taking into account that he's going to get justice and all that— That, I think, Your Honor, is when the term available comes in. All right. Now, if, but if he, if PPIN is solvent, which I suppose it is, and if the courts administer the law as it should, and if your client has an injury, it will be remedied in Nigerian courts. In theory, yes. Under, under Section C— But that's what we have to operate in. Theory. I would disagree, Your Honor, because I think under Section C, the court is necessarily tasked— What? Part of the Section C requirement is that it be an available remedy. They put those two words together. Section C does not say— But it is available. The court already found that this man cannot go to Nigeria, and we have the affidavit of Professor— Wait a minute. He can't go to Nigeria. What do you mean? Against these two defendants. Or against PPIN. He would get no justice. The record in— The record— Why does—yeah, but we don't know. That's, that's speculation. He may or may not. It may be hit and miss, but, I mean, he's got a remedy. I think, Your Honor, that the court, the local court, has a remedy. Yeah, but that, you know, that, I don't think we can be persuaded by that, can we? Because that would be true in nearly every country, you could say, maybe except Western Europe. I mean— I think— The Russian courts don't work. The Hungarian courts don't work. You know, the Bosnian courts don't work. I mean, you know, and the American system is the gem of the, of the Constellation. It's interesting because what the court does under the Form 9 Convenience, though, is the courts actually say, we will relinquish jurisdiction, and you can go to Canada or Bosnia or Cuba or wherever, provided this, this, and this. So when you look at the Form 9 Convenience context, the courts actually do put stipulations on their ruling that they are granting the motion, and it essentially imposes, it essentially makes the remedy available to the litigant. And in this case, one of our requests for relief is that the lower court should have said, if the lower court was going to rule Nigeria gave them a remedy and or Canada did, what we would ask is the lower court should have then imposed on the, on the defendants obligations, stipulations that they would submit to jurisdiction over there, that they would basically make it an available remedy for him. So I mean, part of your argument is that availability has to be determined or defined in the context of the country that we're talking about. And although you're asking us to apply the principle here, you would not necessarily ask us to apply that principle if this claim arose in France. Yes, I think it has to be a claim by claim basis, Your Honor. The definition of what's available in France may be very different from what's available in Nigeria. So availability has no legal fixed meaning. It's case by case. I think it has to be. I think that the legal meaning is Black's Law Dictionary, which we quoted, which essentially says capable of availing, having sufficient power or force to achieve an end. I don't know how Mr. Croak can go avail himself of anything in Nigeria with the finding that the lower court had made on the venue and the affidavit of Professor Oko. Okay, how are we bound by the finding of the district court in this connection? I mean, if we review that, what we review that is clearly erroneous, abuse of discretion or a matter of law, why would we review that? I think it's an issue of first impression, honestly, because the term available was never defined for the lower court. And I think in this case, what the lower court did was, the lower court actually said, Mr. Croak, I agree with you on forum. You don't have an available forum over in Nigeria, and that's in the ruling. Then he goes on and says, however, if there's a remedy, that's a whole different thing. Right there, I think the lower court got off track. The lower court should have said, now my next question is, is there an available remedy in Nigeria? And I don't see how he could possibly balance those two, where he says, you have no forum, you have no mechanism to enforce it, but I'm going to say you have an available remedy to you. I think, if I may, Your Honor, I think what should have been done was, at that point, the court could have put stipulations just like they do in forum non-convenience cases. The court could have said, defendants, you're in here trying to throw this man's case out. I agree with you if you make that an available forum to him, which means one, two, three, whatever the criteria would be. Submit to jurisdiction, you know, recognize any judgment that's received over there. We're getting into those issues that they deal with on forum non-convenience cases. But if we decide your case in your favor, how would our result apply, say, to, again, say the French, and say it's a product liability case, and assuming foreign seamen and so on, the injury resulted from product liability, cause of action, and you had a complete, adequate, full remedy against the manufacturer of the product itself. But there were two or three manufacturers of devices within that product over which the French courts had no jurisdiction. How would we apply the rule you're seeking today to resolve whether the failure of jurisdiction in the French courts would allow you to sue both the primary manufacturer of the product and then turn to the United States courts and sue the two manufacturers of the devices over which you didn't have French jurisdiction? I think what the court would do is what it does in forum non-convenience cases, international forum non-convenience cases, where the court says, we are going to allow transfer of this to Canada or France, provided you all submit to jurisdiction, you all accept, et cetera. And the courts do that all the time in forum non-convenience cases. I've never seen, I mean, I don't know, it could easily, I've never seen that applied in a Western European court situation. Maybe France is a different example. Well, I don't want France. I just picked it out of the, but I mean, it's always some third world country that, whose legal system has not been fully developed. No, and I think, again, it gets back to the word available. Section C does not say a remedy. Well, I'm asking you, but what you're saying here is in effect, in saying the test to you, I have an available remedy against one company. What I'm talking, I don't have available, an available remedy against two other companies that I also want to sue for the same, arising out of the same facts, the same cause of action and everything. But the same thing would pertain in these other examples I've given as well. I mean, you just, you won't have an available remedy against everybody you want to sue. And that just doesn't seem that it is consistent with the purposes of the savings clause of the foreign seaman. I think in this case, Your Honor, the only, I don't think the court looked at any rights or remedies Croak would have against PPIN. I think the court was limiting its Section C analysis to PPITEC and the defendants before it. And the court made a ruling that he basically does have a remedy. I believe the court was saying against these defendants over in Nigeria. I mean, maybe that's an issue for remand on what's the court saying, these defendants, he has some remedy against in Nigeria? Because if so, I get back to the, is it even available to the man in Nigeria? The second, in addition to fashioning requirements or stipulations by the defendants to make the forum available, I mean, all we're asking here, we're not opening up the U.S. courts to all the foreigners. All we're saying to all the foreign seaman claims, which was the concern with Section C, all we're saying is United States District Court, if you're going to send this man on his way, our statute actually says it has to be available to him. United States District Court, if you need to put some requirements in your order that say you have to stipulate the jurisdiction, et cetera, like they do for forum nonconvenience right now, I think that's something the lower court should have done. The second avenue, Your Honor, is in the Jackson v. North Bank towing case, I believe there's jurisdiction in the U.S. to hear the Nigerian or Canadian claims. So the lower court may have said Nigeria does have a book somewhere that has a remedy written into it for this man, but when I look at Section C as a district court, I need to make a finding, is this available to this man or not? And I know he cannot go over to Nigeria for all the reasons we already talked about. So I'm going to . . . Do you have any authority that the corruption or inadequacy of the judicial system itself has been grounds for determining availability in a forum nonconvenience, because we don't have any cases, as I understand it, in this foreign servant, I mean, the foreign seaman? Under Section C, no. This is why I think it's an issue of personal question for you all. You all are deciding how broad the definition . . . But do you have any authority in forum nonconvenience that's ever decided that the forum is inadequate solely on the basis of the inadequacy of the judicial system itself to enforce its own  I cannot quote you on your standing here, Your Honor. All I can say as a factual issue in this matter . . . But you would know it. I mean, you're obviously a very good lawyer, and you've researched this. I don't know one way or the other, honestly. I did not look at that. To me, the tests are different. To me, you're looking at the venue, can he go over there? Forum nonconvenience is a multiple part. Is the venue open, and then does he have a remedy on the textbooks? Here you have a blend of the two. And I think the lower court said, all I'm looking at is, does he have a textbook remedy? I think he does. It's dismissed. And I don't think the court blended the two enough to say, as a practical matter, how available is this to the man? Your Honor, I would point to, I guess, the forum nonconvenience stipulations. If the forum nonconvenience cases did not weigh the availability of the forum, why would they then always put stipulations in them of, we are going to grant your motion to transfer provided you accept service in Canada, you submit to the jurisdiction of Canada, et cetera. Everyone's familiar with those cases where, before the district court transfers, it says, I want to make sure this man has an open door in Canada, or Mexico, or wherever, Argentina. And they put stipulations in the order that says, you have to provide these things, or I'm going to retain jurisdiction, which is why I think this court should visit Jackson versus North Bank. Because, essentially, if the court puts stipulations... But they never put into those stipulations whether the court can enforce its own laws, though, do they? The issue... They assume if a legal remedy exists that fits the claim. Yes. They don't go any further than that. In the forum nonconvenience cases? I think they do look at whether the venue's available. That's why they typically... Well, I mean, assuming the person can get into court, and that there is a remedy provided by the laws of that country. Right. They don't really go much further than that, do they? I think they do. I think they... To what extent? I think they affirmatively put requirements in those orders that the defendants do certain things in order to make that venue available to the claimant. Okay. Such as stipulating to jurisdiction, stipulating to service. I can't sit here and name... All right. Now, let me ask you, because your time is up. Have you said... Have you got any points that you want to make before you sit down? No. Other than... Again, I think the Jackson case should be revisited because... And I think you understand... Okay. I'm going to give you a minute to say what you're going to say, and I won't interrupt you, sir. In brief, what we would ask this court to do is remand the lower court because the definition of available was never properly addressed. If the lower court is of the opinion that there are remedies available to Mr. Croak, I think it needs to either fashion some requirements on the defendants so that Mr. Croak can go to Nigeria or Canada to pursue them. The Canadian claim is expired because they waited very, very long to file this Section C motion. So the lower court at the outset could say, this man can go to Canada, but you all need to agree to waive any statute if that's possible. Again, the lower court... All the lower court would be doing is fashioning... It would basically be saying, if I'm going to find Section C is met and there's an available remedy, these things have to happen for Mr. Croak. One, two, three. And you all have to agree to them. Or I would invite the court to look at Jackson v. North Bank and basically say a district court does have jurisdiction to hear foreign claims if they won't be or can't be transferred out of the U.S. And that's all we're asking. Thank you. Okay. Thank you, sir. Okay, and let's see. We will now hear from Mr. Marks again. Thank you, Your Honor. May it please the Court, my name is Kevin Marks, and I represent in this matter as well the affilee, PPI Tech. Mr. Dove is here with respect to the other affilee, and if it pleases the Court, I'll leave 10 minutes of time for him, and I think our game plan, so to speak, would be to allow him to address the leave to amend Jackson issues, which Mr. Young just addressed. Your Honor, with all due respect to my colleague and my friend, Mr. Young, he and I see this case very differently. This is a pretty straightforward application of a pretty straightforward rule. Mr. Young did not address the first part of the foreign semen exclusion, 30105B. So I believe it's fair to say that those elements are met. They're a very straightforward application. Mr. Croak was not a citizen or permanent resident alien of the United States. The incident occurred in territorial waters of another country, namely Nigeria, and Mr. Croak was employed in the exploration, development, and production of offshore mineral or energy resources, namely drilling. So the statute attaches here, and the burden then shifts, and that's where I think the issue may be. Mr. Young provides a very interesting esoteric argument on the definition of availability and whether the court should delve into the equities which may exist in foreign jurisdictions. But the simple matter of the fact is if we go to see, the burden then is on him to prove that a remedy does not exist, and what the trial court said, simply, succinctly, and B applies, he's a foreign semen, so C then applies, and the burden falls to Mr. Croak to say that he lacks a remedy either in the country where he lives and resides and is a citizen or a permanent resident. But he does say, but then he comes back and does say that, he put on expert witnesses he could not get any justice in the court, and he does argue that the remedy is not available. I mean, he does argue that as a matter of law. And I don't disagree with you, Judge Jolly. What I'm saying is that Judge Barbier weighed that and correctly concluded, well, that burden simply wasn't met. Mr. Croak did not meet your burden. As to Nigeria, he did not meet it for two reasons. Number one, because if we get to the substance and we divorce ourselves from the burden aspects of it, on the substance, the trial court has concluded that a remedy exists, and he cites the Castanet case. But even before we make that switch, we look to the issue that I think continues to be the issue of foreign non-convenience versus the availability of a remedy. And foreign non-convenience, Mr. Young is right. I know of no cases, and we look for them, that would address specifically defining what available means. I think it can be given its plain meaning. I don't think that this is a difficult esoteric exercise. But to refer back to foreign non-convenience arguments where a trial court has concluded it has jurisdiction, and in fact, the parties are in front of it saying, look, Your Honor, we think you have jurisdiction. We just think it's a lot more convenient to go to Nigeria or to go to Texas. That's what we're arguing. In that case, that's very different. When a trial court says, all right, I've looked at those convenience factors. I'm inclined to agree with you. But Mr. Marks, you're not going to pull a fast one. If you want to say that it's more convenient to argue in Nigeria, well, then you better stipulate that you're going to succumb to Nigerian jurisdiction. And that was what was lacking in the foreign non-convenience arguments, and that's why the trial court said, I think it's at least as convenient, and I'm not going to divest myself of jurisdiction on a foreign non-convenience argument. We really are talking apples to oranges. In a foreign seaman circumstance, we're talking about the technical elements being met in almost a checklist manner, and then the burden shifting to the plaintiff to say that there's no remedy. And of course, again, we've addressed the fact that the remedy does exist on the books in Nigeria, and the trial court properly recognized that. And really, the final issue on that is the Canadian remedy, of course, existed implicitly. I mean, there's something about the difference between foreign non-convenience and the savings clause in the foreign seaman's provision of Jones Act that doesn't the plaintiff in a case that is dismissed for foreign non-convenience have a cause of action in the United States? Yes. Otherwise, it wouldn't be a different form. Without a doubt. But in this case, the statute clearly says that they don't have a cause of action in this country, and you're trying to say that there's an exception to the cause of action as opposed to—I mean, I'm not quite sure what significance that has. I think it's very significant because, again, with the foreign non-convenience argument, the parties are basically in front of a jurisdiction, such as the Eastern District of Louisiana, and say, all right, if you want to exercise jurisdiction, you got it, but here's why you shouldn't. And it's one of basic fundamental convenience to the parties. And so that court, if it decides to divest itself over the power it has over that case, it's going to do so, but rightfully so, as Mr. Young says, by putting some restrictions. Look, Mr. Marks, you can't say you're more convenient in Florida, you're more convenient in Alabama, you're more convenient in Nigeria, without at least— In other words, that individual would seem to have greater rights under a foreign non-convenience analysis than a plaintiff would have under the foreign— Undeniably so. Undeniably so. In this instance, this foreign seaman puts himself in front of the Eastern District and says, look, I recognize under B, I'm not supposed to be here, but you've given me an alternative under C, an option to say, I'm going to plead out the exception by proving, by exercising and meeting my burden to say that there lacks an available remedy in either Nigeria or Canada, in Mr. Kirk's case. And what Judge Barbier said in this instance was that that burden was not met. In other words, he said, I don't—I acknowledge I've got to prove I have a cause of action. It's not a given. Correct. Now, and I think I can be mercifully brief, what Mr. Young really did not also adjust is the fact that his client had Canadian remedies. And implicit in this argument, where he brought this Canadian barrister and said, hey, you should allow foreign jurisdiction to be exercised in this case, was a recognition that but for a time delay, which was missed, which— He blames that on you. Yes, he blames that on my legal maneuvering and the clandestine waiting until the three-year statute in Canada ran. That's not what happened. He had an available remedy. He failed to exercise it. He simply came to the United States rather than exercising the remedy in Canada or in Nigeria. He's a— He's liable to meet his burden on a foreign claim here. Yeah, he's a sophisticated lawyer. He knew the statute. I mean, he knew or should have known that the statute in Canada was running. I agree. I think, to say it another way, the equity argument that the Canadian remedy ceases to exist and a litigant blew a statute of limitations should not carry much weight. It didn't hit the trial level and it should not before this court. So, I'll reserve the remainder of the arguments on the Jackson issue and defer to my colleague, Mr. Dove, on that. Okay, Mr. Dove. Thank you. Thank you. Good morning, and may it please the Court. My name is Chris Dove on behalf of Global Santa Fe Offshore Services, Inc. I am capable of continuing the discussion about this question of whether he has an American remedy under the Jones Act exclusion, but a couple of observations I wanted to make about this. Judge Jolly, you asked Mr. Young, what is the standard we're going to apply in reviewing this? This adds a couple of linkers that haven't been brought up that I thought I would mention. He keeps wanting to talk about this affidavit that's in the record from a professor about Nigerian law. The problem is that he did not submit it to the district court. His co-plaintiff, earlier in a separate motion, had filed that affidavit. He did not bring it to the attention of the district court, and that is why Judge Barbier expressly says in his order, you have given me no evidence of what Nigerian law is. You have cited me to an order, and all the order says is that the EPI is not subject to jurisdiction there. Well, now I guess that's the only argument you have. Let me consider that. Well, I don't think that's what this statute requires. To the extent he wants to now rely on this affidavit, this court has never, ever said that a district court must rummage through 8,000 pages of record to go find an affidavit that you did not direct the court to. He did not raise it in any argument before the district court. That's correct. He even filed a 159E motion and did not bring it up at that time. I think it's entirely fair to say Judge Barbier... So, I mean, in other words, he's making an argument on appeals that he's not made below. That is correct. So, I mean, usually that's a waiver. I agree. Another area where I believe that this court can look very narrowly at what is before it is the fact that in his brief, he either does not address his obligation to prove Canadian law at all, or if he does, it is because impassive. He says, well, the time to file a new claim had passed because of this delay, because you didn't tell us you let so much time elapse. That is the only argument he makes regarding Canadian law. Well, in order to overcome the foreign seaman exclusion, he must prove that he had no available remedy in Nigeria or in Canada. Tellingly, his brief in two places expressly says, I could have sued in Canada if I had done it timely. I think that is a telling admission. If you care to write about Nigeria, you can. Well, I mean, that takes us off the focus that the arguments have been on so far, and that is the definition of availability. That is correct. It essentially bypasses the issue altogether. The final issue I would bring up to the court relates to the second phase of the case, if you will. He has two large arguments. One is, I had an American remedy notwithstanding the Jones Act's exclusion. Secondly, the court erred by not allowing me to amend to allege a remedy under Canadian law. And on this ground, the court has a number of ways to deal with this that have nothing to do with the Jackson case, which admittedly is an interesting sort of jurisprudential question. The first is that his request to amend came eight months after the district court had entered an order saying absolutely no more amendments under Rule 16. That means he had to show good cause for leave to amend. He did not attempt to discharge that duty. His own brief doesn't even recognize that Rule 16 obliges him to do that. That alone is a sufficient reason for this court to affirm Judge Barbier's denial of that motion. It's abuse of discretion, which is, you know, a pretty steep hill to climb. I agree, Your Honor. Even if you felt that that was not sufficient, the next problem that he faces is that he cannot show that there was jurisdiction over such claims. And the problem that comes down to this, he does not have federal question jurisdiction. He does not have diversity because my client is a foreign corporation that's undisputed. All he could possibly base jurisdiction in a federal court on is the admiralty statute, 28 U.S.C. 1333. The problem is this, and this never arose in Jackson. The maritime jurisdictional statute is itself a maritime law of the United States. It is barred by the Jones Act's exclusion. If you could possibly prove jurisdiction under some other theory, you might be able to have access to that. But he has no subject matter jurisdiction over these claims he wanted to add. Judge Barbier could not have abused his discretion by refusing to grant leave to add claims that are barred for lack of subject matter jurisdiction. This is a problem that he, again, doesn't engage in his briefing. He wants to overlook because it's a fundamental problem. He wants to leap to the third stage of this question, which is, well, but assuming you have jurisdiction under some other theory that's never been proven, alleged, or argued in this case, that under those circumstances, I might be able to allege a Canadian law remedy that I've never described, explained under what law, against whom, under what theory, or why Canadian law would apply, and so on. That doesn't hold up. There are so many problems with that amendment theory. We believe the court should just affirm on that ground. So, among the two issues we have here, has he proven that he had a remedy under American law? We believe he has not. First, he does not address his Canadian remedy. Secondly, he did not prove that Nigeria provides an insufficient legal remedy, even if such a thing mattered. And secondly, for the reasons that Mr. Marks explained, it just does not seem to match this very hostile, exclusionary statute to say that they meant to allow the same remedies against the same parties in the other country. They have remedies. He can sue, as you have noted, PPIN. He can sue a Global Santa Fe affiliate called TSSNL. It is undisputed that his legal theory ought to be asserted against TSSNL. Of course, he disagrees that it's the subject of a separate appeal currently pending under another number, argued in front of a different panel. But what is undisputed is that he has a remedy in Nigeria against an entity ready to stand liable for his allegations. We don't believe they have merit, of course, but he has the remedy. Under these circumstances, we believe that this court should affirm. Do you have any other questions? Well, I have a question. How would you like to know that the only thing, that the only reliable source of justice was a Nigerian court? Your Honor, I . . . I mean, that's somewhat facetious of me. It is a hard question. It's something that's very fair, and I'm sure it confronts everyone who agrees to the work in Nigeria. Well, I know. I mean, I . . . I mean, I understand what he's saying, but that just doesn't seem to bear on the legal analysis, really. I agree with that, Your Honor. Okay. Thank you. Thank you very much, and we will hear from Mr. Young now. It's got a little bit of time. Your Honor, as far as the affidavit of Professor Oko, that was actually submitted with one of Mr. Croak's oppositions early on. The cases have been consolidated, so what's in the record as to Johnson is in the record as to Croak. The point of referring the court back to the order on that motion to dismiss was to simply point out that the court, Judge Vance, had already made findings that Nigeria was not available to this man. I think at the heart of this case, you give to what does the word available mean. It's not in any cases. It's never been determined by this court. I would argue it has got to be somewhere between the four nonconvenience of is there an open door for these people in other countries . . . You're making the exception to the foreign seamen's restrictions the rule. I mean . . . I don't think I'm making it too broad because . . . I mean there would be no end to it. I think there would be no end to it. I mean it's got to mean something, and what you're saying is I can sue the people that I can't reach irrespective of the remedy that I have. I acknowledge I have a remedy against a defendant in Nigeria for the claim I am asserting. Yes. But there are other people in this case that I would like to sue also. I don't have jurisdiction over them, but I can go and sue in the United States courts for all of them. Well, that's exactly what they're trying to preclude under the . . . it seems to me under the Foreign Service . . . under the Foreign Service exemption. I think implicit in what you're saying, Judge Jolly, is that Section C looks at any and all possible parties against whom they would have remedies. And that's something that . . . But how did you say that? I mean you say that, but just saying it doesn't make it so. But my point is that the lower court never looked at PPIN or the Transocean Nigerian entity. When the lower court did its analysis in this case, it only looked at the defendants in front of it. And it made a finding that Croke had available remedies against those defendants. What you're arguing, Judge Jolly, is a little bit different, which is can we, when we look at Section C, can we go out and look at all these different companies and say, well you may not have a remedy against these people, but I'm going to attach you to PPIN and you can go sue them, so I'm going to grant this Section B exclusion and put you out of the U.S. My first observation, Your Honor, is the lower court in this case only looked at PPI Tech and GSF. And I think that's where it erred because it made a finding that this man had an available remedy against those entities, which he does not because of no forum and he does not because the statute ran, which could be remedied in the lower court if the lower court fashioned some requirements on its order, which is essentially that they have to waive the statute and they have to make the remedy available to this man. I get your argument. I'm not unsympathetic to it except it's so terribly broad. I mean, it's one of those things I was referring to earlier about unanticipated consequences. Well, I guess the question would be where are Mr. Croak's available remedies under Section C? And it sounds like Your Honor is saying he can go to Nigeria and try to get what he can from other entities besides the ones in front of this court. I don't know that Section C says you go outside of the defendants in front of you. That's the first question I would have. Well, but you could sue anybody. I'm talking about the plaintiff could sue all of the other participants in the project over which the Nigerian courts had no jurisdiction and wind up suing, in effect, in run around the Foreign Service, I mean the Foreign Seaman Exclusion. I think in that situation the court would say you are going to Nigeria, which is where this case may belong, but defendants, in order for that to happen, you all have to agree to jurisdiction, you have to agree to X, Y, and Z. It's a simple form of nonconvenience analysis that the courts do where they put You mean, we would say, so the effect of that is to do exactly what you're asking us to do without saying the words. All I'm asking, Your Honor, is that if the lower court makes a finding that there's a remedy available to croak, the only way it could have done that was if it fashioned some requirements on the defendants in order to grant the order. Yeah, but that's what I'm saying, is you're saying that if, in order for the Eastern District of Louisiana not to have jurisdiction over the two parties that you're suing, it would have to enter an order that says that the plaintiff has to have a remedy against these two defendants, which we concede they don't have, which is your position to begin with. So that doesn't add anything to the case. No, I think that's getting into the merits of the substance of the claim. All I'm asking is that if there's a finding that there's something available to this man, in the posture the lower court has the case. No, it's all you want. If the lower court says that the Nigerian courts provide a remedy, I thought that was conceded, but they provide a remedy for this claim, that's all you want? No. In that situation, Your Honor, all that the court has done was looked at the second prong of the form of nonconvenience and said there is something written on a textbook in Nigeria that gives you some right. I didn't write the statute. The U.S. Congress put the word available in there. And if all you do is look at is there something in a textbook there, we're ignoring the word available. No, it's more than that. We're saying it's on the textbooks that can be enforced. We assume they have a court system that will enforce the statutes that are in its law books. I think in this case the court had previously made a factual finding that Croak had no ability to enforce. What do you have to say about their argument on that, that this is something that you're raising on appeal that you've never raised before? I think it's been raised in the lower – I would stand on the record, Your Honor, but I think – I know for sure we argued it. But he says – has it been introduced into the record in this case? The cases were consolidated. I positively know it was introduced in Johnson's opposition to the motion to dismiss. They filed a similar motion for Croak, I believe, which we would have attached it to. So the affidavit would be filed in Johnson's consolidated. It would also be filed in Croak's opposition. It was a MeToo motion that they filed on Croak, if I recall right. This has been about two years since they did all that preliminary stuff. So, again, I know I'm reiterating myself, but there has to be some meaning to the word available. I agree with that. No case has ever – But, I mean, the question is – I mean, no question about that. But we have to – the question is how restricted or how liberal will we make that definition. That's the question. And it's not an esoteric – there was a comment that we're coming up with this esoteric definition. We're looking at black – Oh, no, no, no. We're coming up with a legal definition. Which I – Not a black's law dictionary, not a Webster's dictionary. A legal definition of it. That's what we've got to come up with. Yes, and I think that the word should be given its plain meaning as something that the guy can go out and seek. That's Webster's definition. I mean, it has to be a word of – I mean, it's a term of art. Available? Yeah. And the challenge is it's used also – it's one of the tests that the court already does when it looks at foreign nonconvenience. So are we going to create two different tests for what's available to these people or not in the same Jones Act law, basically? That's my challenge with it. Well, thank you very much for your arguments, Mr. Young. You've done a fine job, and I think you've benefited the court considerably. So let's have the other side as well. That completes the arguments we have on the oral argument calendar for today. So this panel will stand in recess until tomorrow morning.